The next case we'll hear this morning is United States v. Fitzpatrick. And Mr. Attias, whenever you're ready, we'll hear from you. Good morning. Your Honors, the question at issue in this case is whether the District Court abused its discretion in imposing a 17-day time-served sentence on a defendant who not only possessed child pornography, images of pretty pubescent girls masturbating, but was chiefly the creator and operator of Breach Forums, which was the largest data breach forum of its kind. Transacted on that website, broker deals involving millions... Keep your voice up, son. Broker deals involving the personal sensitive information of millions of individuals, caused hundreds of thousands of dollars of damage, created numerous victims, earned for himself almost $700,000. And then, after he was caught, ostensibly accepted responsibility by pleading guilty, continued to demonstrate recidivist-type behavior and a disregard for court orders. In the government's view, the District Court abused its discretion by relying exclusively on the defendant's mental health. We make that argument with ample support from this Court's precedents, specifically Zook, as well as Engel, Howard, and George. And as we explained in our brief, we believe that this Court can remand and reverse, excuse me, based on the Zook error alone. Just to be clear, and I think it's probably our fault, because I think our cases blend procedural and substantive unreasonableness in ways that don't make a lot of sense to me, but is your argument that the District Court didn't consider the other 3553 factors, or is it that the District and or gave too much weight to one factor? So our chief argument is that, based on Zook and other related cases, this is a Zook claim that the District Court sentenced the defendant with exclusive reliance on his mental health to the exclusion of really a reasoned analysis of the other factors. There's a little bit of procedural, you know, proceduralness in that, but at its core... But we've said that. We've nonetheless said that's substantive unreasonableness. That's correct. At its core, this is a Zook challenge. And I guess sort of where the rubber hits the road is that... And this case is similar to Zook in this respect. In Zook, the District Court focused almost exclusively on the defendant's mental health. Zook also said that the Court gave, quote, passing attention to some of the other factors. So it's not like the Court didn't say anything. I think the same is true here. The Court gave some passing attention to the other factors. But fundamentally, we think that the District Court's reasoning is flawed for a number of reasons. And, of course, the overarching claim is that the Court relied exclusively on the defendant's mental health. I think one of the great ways of appreciating the scope of the District Court's error is to just look at some of the other sentencing factors and see how the District Court's sentence accommodates those factors. So if you look at the seriousness of the offense and just punishment, here we have really a double-barreled form of error because the defendant pled guilty, unlike any of the other cases, like Zook, Engel, etc., the defendant pled guilty to two different types of crimes, two different types of criminal behavior. In the perspective of child pornography, this Court's cases are clear that any child pornography, even simple possession-type cases, simple possession, any child pornography offense is serious and the Courts ought to give serious consideration to the need for significant punishment in this arena. With respect to the data breach, the breach forms conduct, here... If I understand the District Court correctly, it was not adjusting punishment, basically. It was not determining what was an appropriate punishment. It was basically concluding that this man would get mistreated in prison because of his condition and, therefore, he should not serve his time in prison. I think that was the concern expressed. And, of course, if that's so, the Court hardly addressed all the factors about what the appropriate penalty would have been. That's correct. I mean, the District Court made a number of conclusions in the course of sentencing the defendant. Number one, I think the biggest error is that the Bureau of Prisons, for example, that he would never get the treatment he needs, which is another way of saying the BOP can't accommodate an inmate like the defendant. The District Court didn't point to anything in the record to support that proposition, which, of course, is a sweeping proposition about a fairly large organ of the government generally making those types of claims, including testimony, would include testimony, evidence, etc. We don't have any of that here. I've tried to find a source for it in the medical reports. I can't find it. There's also a claim about victimization. And there's also sort of speculation as to how the defendant, quote-unquote, survived these past two weeks in the local detention facility. The Court made those conclusions. Well, it seems to me that was the only... The guidelines was, what, 188 to 235 months or something like that? That's right. And that really wasn't addressed, and there wasn't a variant sentence. The Court basically was concerned about putting the man in a context where he would have severe difficulty in surviving or not being subjected to co-prisoner misconduct. I think that was her chief and only reason he sentenced her to time served, 17 days. That's correct. And there was the same concern was that issue in the District Court in Zook. The concern there was both his mental health and also that he'd be victimized. This Court reversed. I think all of the District Court's concerns are tied in to its concern over the defendant's mental health. But you mentioned that this was a variant sentence. The District Court explained that this is why I varied so extensively. As part of this Court's review, in assessing the legitimacy of a variant sentence, the Court, number one, has to look at whether the fact relied on by the District Court can bear the weight assigned to it. And also, in assessing a variance of this magnitude, the Court looks to the justification. The greater the variance, the more significant the justification should be. To your point, Judge Niemeyer, the District Court barely discussed the basis for its reasons as to why the defendant would be victimized. It speculated that he's only survived in the Alexandria Detention Facility because he's in a mental health unit, moments after the defendant had said that he's basically doing just fine there and not even taking any classes, and then quickly pivoted to a sweeping statement that he'd never get the mental health treatment that he needs. Again, there's no source for that proposition, and the defendant hasn't identified any. But overall, the District Court's reliance on the defendant's mental health and sort of attendant-related conclusions are basically, you know, the over-reliance comes at the expense of a reasoned analysis of other sentencing factors. One of those I mentioned before was the seriousness of the offense. The other really important factor that really leaps off the pages of this appeal is specific deterrence and public safety. There are indications in this case from the moment the defendant committed the crime, he created breach forums about a month after its predecessor website, Raid Forums, had been taken offline and its founder arrested overseas. That ordinarily would deter somebody from doing the same thing. The defendant took him just a month to create breach forums and then do exactly the same thing that the predecessor forum had done. He created breach forums basically to be a replacement for Raid Forums. And then after pleading guilty, excuse me, after his arrest, the defendant quickly violated the condition of his release that he not contact members of breach forums. Judge Anderson and the Magistrate, Judge Anderson, and the Eastern District of Virginia gave him a pass. Instead of taking that pass, the defendant basically doubled down and leaned in, pled guilty, but for months he had been violating the conditions of his release, that he not use an unmonitored cell phone and that he not download software that obscures his identity. Even the district court had to acknowledge, and this is JA-163, that the defendant's conduct on pre-trial release suggested that he wasn't amenable to control in the community. That's exactly right. But the district court certainly never returned to that point. And a 17-day time for sentence is impossible to square with that realization. And the same concerns go to the need for public safety. The district court, after a 17-day prison sentence, all 17 of which were served because the defendant violated pre-trial release conditions, sent the defendant straight back to the exact same place where he committed his crimes and to the exact same place where just about two or three weeks ago he had been violating the conditions of his release. And, of course, the substance of the defendant's communications, which are under seal so I won't get into them, but the court is aware of them, the substance of those communications paints a picture of a defendant who had basically almost immediately lapsed back into the same conduct that got him into court in the first place. Can I ask you about the scope of the ask, which I'm sure you've thought about a lot? I read the conclusion section of your brief as simply saying the sentence should be vacated and the case should be remanded for resentencing. That is the scope of the ask, correct? That is correct. It is not to direct the district court to impose a particular sentence. It is not to direct the district court to impose a sentence of no less than blank. Well, I think that when a party raises a substantive appeal, a challenge of substantive unreasonableness inherent in that challenge Is what's the least amount that would be substantively reasonable? Well, we're not asking the court to impose a particular sentence, but I think if the court reverses based on Zook, the court will be saying that you cannot sentence this defendant to 17 days in prison. Sure, that the district court could not impose the same sentence. The same sentence and sort of logic. A penumbra around the same sentence? Anything around that sentence. And I think that's the upshot of this court's substantive reasonableness case is to take the other side of the scale. This court in Howard found a life sentence substantively unreasonable. So that meant that the district court couldn't go back and layer it on with procedure and just say a few more words. You can't get to the same bottom line result. That's exactly right. You can't get the same bottom line result. It seems to me, if we were to send it back, we would have to base that on an abuse of discretion. And the question comes, the bottom guideline says 188 months. And the court decides, okay, I'm going to go through all the factors and sentence him to one year. Would you come back? Your Honor, I can't answer that question. I know you can't because these are the types of questions that, you know, on discretion you keep drawing the lines. Is it one year? Is it six months? Is it ten years? Sure. What is it? I mean, the conduct was very serious, and I think the court recognized that. The misconduct. Yes, the criminal conduct was extremely serious and the violations of pretrial release were extremely serious and consistent and repeated. I'm prompted by Judge Hyten's question, which I hadn't really thought of before right now, but how do we mandate or should we mandate some instructions about the exercise of discretion? Right. So in the district court, the government asked for a bottom of the guideline sentence. That's 188 months. We asked for that because we thought the district court was... Sure, but you wouldn't have appealed it. If the district court had very dabbered 10%, you would not have appealed. That's exactly right. Just because the district court doesn't give the sentence we asked for doesn't mean it's abused its discretion. I think the magnitude of the variance here is so in your face, so extreme... Well, that's not the issue. The issue is should our... I think it's a legitimate question. Vacate and remand is really what you're asking for, but the question is should there be or how do you give an instruction with respect to discretion in these circumstances? The discretion is committed to the district court, and we review for abuse. Now, maybe the best thing is to do exactly what you say, just remand and let the judge assess again with different factors, and we'll see what happens. Right. So I don't think the court needs to give the district court a certain number, but I think in the course of an opinion... Not a certain number, but maybe some instruction. Absolutely. In the course of an opinion reversing on substantive unreasonableness, the court generally explains which factors were overlooked or not accommodated by the sentence. So in this case, the most salient factors are seriousness of the offense, just punishment, specific deterrence, and public safety, and then, of course, there's the overarching concern for general deterrence, both for child pornography offenders and also for cyber criminals and the types of people that frequent forums like breach forums. Those are all factors that are not accommodated by the sentence. We don't think, almost as an objective matter, that you can take those factors into consideration and come up with a sentence that's anywhere near 17 days. That doesn't mean the court has to give a number, but I think properly instructed, the court, and I think this is the upshot of most decisions where the court reverses for substantive unreasonableness, the court doesn't give a number. The court explains, as in George, this sentence doesn't accommodate these concerns, these sentencing concerns, do it again, and generally district courts get the message. Do you recall what we did in Zook? In Zook, the court reversed and remanded. It didn't give a particular sentence. It didn't mandate a particular sentence, but it said that this sentence that the district court imposed, which there was 26 months, time served, failed to account for, I think, the seriousness of the offense, just punishment, respect for the law, and maybe one other factor. And those are the factors that the court focused on. Thank you. Thank you. All right, we'll hear from Mr. Frisch. Your Honors, good morning. For Mr. Fitzpatrick, I'm Andrew Frisch. I'm accompanied at counsel's table by my co-counsel, Peter Katz, and I want to start maybe in reverse logical order, given the court's questions thus far, and go to the rest of my argument after. Should the court remand? I'm going to be arguing why the court should not do that. I would suggest the court should do what it did in Provence, at least one case, the name of which I remember, but other cases, which is better explain yourself. You have a couple of paragraphs about your reasoning for the sentence, but it's not clear to us. You know, if the court went through all the motions, explained, I mean, this is quite serious conduct we have here. It's the largest scale operation of its kind ever, and the court explained all this and mitigated it somehow and then said 17 days remains appropriate. Doesn't that present a substantive problem? No. First of all, I think the first step is... Because the argument is that it's substantive, mainly substantive, not procedural. Procedural would be to explain, but the procedural aspect is the court really focused, I think, in my view, taking the whole record as a whole, the court was prompted mainly by this man's physical condition, not to sentence him to jail. And as a consequence, it did not explain how it satisfied removing the man from criminal conduct, deterrence, punishment, and so forth. But if it's substantive, I don't believe the court could do the same thing again, could it? Well, let me answer the question by making two maybe buckets of arguments. The first of which is that there's this overlap, as His Honor noted, between procedural and substantive reasonableness. And so the first thing this court would need to do is understand precisely what she was saying. She gave her reasonings in a few paragraphs. I'll come to that in a second. But I think before the court decides whether something is substantive, unreasonable, or reasonable, I think the district court should have an opportunity to explain why a more fulsome discussion of why she was exercising discretion as she did. Well, we know why. She explained why. And it seems to me, I don't know what more she could say to understand her. I know exactly why because she said why. And there's two things she said. She just didn't say about the mental health, though I'll talk about that in a second. She also said, and these are her words. I'm reading from the Appendix 173. My concern is taking a 21-year-old young man who is probably closer to a 16- or 17-year-old in terms of actual maturity. Let's forget the mental health part of this for a second. She imposed sentence at the time the Sentencing Commission was considering and has since enacted its directive about how to treat youthful offenders in an appropriate case. And that's not necessarily new law. It's a new approach. But before the guidelines were made to be advisory as opposed to mandatory, a court could consider things like youthfulness in deciding to give a non-heartland sentence. So I disagree with the government that this is only about mental health. I also think the court should not be wading in here as to the court's view as to whether or not the Bureau of Prisons can accommodate someone like Mr. Fitzpatrick, which I think is relevant to this. Because if you have someone with his condition, and we know the Bureau of Prisons cannot deal with it, and we know the Bureau of Prisons cannot deal with it, and we know the Bureau of Prisons cannot deal with it, What is the best evidence in the record that supports the district court's sweeping statement that BOP simply cannot accommodate someone? I mean, that was a rather striking statement to make about the entire Bureau of Prisons. Your Honor, I hear what you're saying. So what's the best evidence in the record that could support that rather sweeping statement? The government didn't contest it. It was in defense. No, no, no. Really? Okay. So what did you say that they didn't contest? In the defense, I wasn't there, but my colleague was there. So what you said was that, and I believe it's also in one of the medical health reports, was that the Bureau of Prisons cannot accommodate or generally cannot accommodate. I thought the report says BOP sometimes has difficulty accommodating some things, which is different than saying BOP literally can't accommodate anyone who has autism. I don't disagree with that. I think there was some language of equivocation. But here's what I would say about it, Judge. We shouldn't be here. We shouldn't be here discussing this when this issue was presented in district court and the government was even afforded an opportunity to speak after sentence was imposed and they said nothing. If you're going to take an appeal, I had their job for about 15 years a long time ago, if you're going to take an appeal to a circuit court of appeals and the judge says, I just imposed sentence, is there anything else you want to tell me? That's the time to speak. I think, Your Honor, this court should not be in the position of looking at the record and saying what supports that when my colleague didn't make it an issue in district court. My view as a defense lawyer, and I'm a bit older than my colleague, so I've been around a bit longer, is that I think a district judge can take judicial notice. Of the fact that BOP is incapable of providing mental health treatment to people with autism, you think you can take judicial notice of that fact? I believe that. That seems insane to me, with all due respect. I believe it, but if it's not judicial notice, I think it's something that on remand, if that happens in this case, that can be established. It's not a secret that the Bureau of Prisons is an agency in crisis, even as to dealing with mentally sound inmates, even with the most simple things around the country. That's why there's just bipartisan agreement. What's the evidence of the BOP being in crisis? Beg your pardon? What's the evidence of that? It wasn't addressed on the record. It's certainly been addressed in the public forum, in the authorities. I cited the articles, the press. I think that, and again, I understand what your concerns are about the lack of evidence of that in the record, but I submit in answer to your Honor's question that it's common knowledge that the Bureau of Prisons is an agency in crisis, and district judges and defense practitioners at least.  In all respects. They do not deal with mental health issues only in the periphery and only in a way that would be inadequate for Mr. Fitzpatrick. If the court remands it, I hope that you don't do it, but if you do, I'll prove that on remand. They simply do not have the capacity to deal with significant mental health issues, period. It doesn't mean you don't put someone in with mental health. If it's someone like Zook who committed that kind of crime, some crimes shift the balance, but not here. Don't we have mental health as an issue in a large percentage of crimes? As a matter of fact, many crimes are thought to be the product of different degrees of mental health. Agreed. I think it's a balancing of what's the crime and what are all the circumstances. And if you have a terrorist, if you have a substantial drug dealer, the mental health falls down a little bit. But when you put in here the age of Mr. Fitzpatrick and the sentencing commission's directive about what to do and how to try to avoid prison in appropriate cases for youthful offenders, I think that shifts the balance in favor of not putting him in prison. Can I turn you to a couple other things the district court said that I find troubling? Do you agree that no expert actually testified that your client's mental health condition caused him to commit either bucket of offenses? I don't. Who said that? Dr. Belchick-Schwartz cited at page 12 to 13 of my brief, in which he essentially said in substance Where's that in the record? Yes. Where is it in the record? I don't have the page number, but I cite to Judge Belchick-Schwartz at page 12 to 13. The pages in the joint appendix are in my brief at page 12 to 13. And what is your understanding of what that person said, the strongest thing? My understanding of what she said is that he sought solace and companionship online. He made friends online. He was naive online. That could apply to a lot of people, including people without mental health conditions. Well, to the extent, Your Honor, here's what I would say, Your Honor. To the extent Your Honor has doubts about what the judge, the district court meant, or what she read from that, the answer is, and again, I echo what I said before, which is the answer is for her to better explain why she exercised her discretion as she did. So on a related front, can I just go back to that? I just want to clear this up. You agree that even that statement, if you read it for what you're arguing that we should read it, none of that involves obtaining or retaining images of child pornography. To the extent your expert talked about how the mental health condition might have led to the crime, the crime we're talking about is the data stuff. That doesn't explain at all the child pornography stuff. I don't agree with the last part of your sentence that doesn't explain it at all. You sought solace online by downloading and retaining images of child sex abuse material? Here's what I would say to that. This is someone who lived online. I'm not minimizing the seriousness of one image. But we're talking about 26 images, by the way, as opposed to 13,000 images in Zouk and 473 videos and all the other conduct in Zouk. I thought it said 600 images. In Zouk? No, in this one. Oh, this was 26. I was just comparing. 26 files, but I thought it was 600 images. I know it's 26 files. The number of images, I must say, Your Honor, I don't. If you have it there, then... It's page 233. I take that as the number of images. I was thinking of the number of files. But what I would say... You're saying you're not discounting it. I mean, that's exactly what the district court does by determining the length of the sentence, right? I'm not discounting it. A longer sentence says this is more significant conduct. It deserves greater punishment. A sentence of zero additional days in prison discounts the seriousness of the conduct. That's just what we do when you decide do you get zero days, do you get 5,000 days, which was somewhere around the bottom of the guidelines range here. Part of that is a judgment of the seriousness of the offense, isn't it? I don't disagree with that, but I don't think you consider that factor in a vacuum. That's right. You don't consider the factors in a vacuum. I think you look at the factor of the seriousness, and it is serious, even to possess one or a small number of files or images. But then if you look at the other factors, including Mr. Fitzpatrick's youth, his mental health issues, his atypical reliance online, his look for solace and companionship online. That's a good point about his online activity and how he seems to have his world there. And even after he pled guilty, he continued to have his world there and violate everything the court was telling him not to do online. The district court didn't seem to put any, there's nothing that's going to prevent him from doing that when he returns home. So, look, I think it's appropriate to compare someone like this, someone who has these substantial mental health issues, with someone who has something like a drug addiction. It's not a faucet which immediately turns off. There's a period of acclimating and understanding, and with Mr. Fitzpatrick, the fact that he now understands how out of touch he was with reality, how he didn't understand the harm of what he was doing, how he was lost in his own world. And he's been compliant for the year since he was violated on his terms of release. And so I think you have to look at it not as a faucet, the way that if me or one of my colleagues had a condition imposed on us, we would know what to do and how to do it and how to respond. But when you're 19 years old and you have his mix of issues, it's a little bit different, and I don't think it's an abuse of discretion for this district judge to sort of give him some leeway on that and give him a chance to see what happens. Over 20 years of supervised release and registry as a sex offender and two years of home arrest, needless to say, if he can't live up, as me or my colleagues could live up on day one, there's a problem, and I'm sure my colleague at the government's desk will be back before a district court. So I think the conduct is serious, but I think the judge balanced it with both his youth, which was a factor in addition to his mental health, and his mental health. And if any of this is, if the court is uncertain about any of this, as much as I think the right remedy is to affirm, because she has such wide discretion, it's to at least send it back to her to ask her to better explain what she was thinking and to better go through the factors. And I think she's a sufficiently experienced judge to understand what the court expects from her. That is, she'll understand the court's concern that she imposed too lenient a sentence, and if she thinks she imposed the right sentence, I expect she'll explain that to the court. That's not what substantive unreasonableness means. It means we think the substance of the sentence is unreasonable. It would be unreasonable to sentence this man to 17 days. That's what a ruling on substantive unreasonableness would mean. It doesn't mean you need to explain it more. We already know the explanation. Well, I think, I'm sorry, Jennifer, I didn't mean to cut you off. No, go ahead. No, I think as I said when I stood up, I think it's a mix of things. I think part of what the court, part of the way in which the court may have failed is that she didn't better explain what she was thinking. She gave a two-paragraph or three-paragraph explanation relying on his youth and mental health and didn't really give the kind of line-by-line statutory factor discussion which other judges do. But that's just saying the government might have had a procedural unreasonableness appeal too, but they didn't bring one. The one they brought is a substantive unreasonableness appeal. And again, in Provence and other cases, the court consented down. Before the court finds an abuse of discretion substantively, I think a district court should have an opportunity to better explain what she was thinking. But the very idea of substantive, I mean, it's a deferential. It's extremely deferential. The guidelines aren't binding, all of that. But the very premise that we have substantive unreasonableness review is that sometimes an appellate court can say while giving a great deal of deference to the district court and its superior ability to find facts, at some point the existence of substantive unreasonableness suggests there is a universe of cases in which an appellate court says this is simply too short. The problem is not that you didn't explain it well enough. The problem is not that we can't figure out what you meant. The problem is not that you didn't make a good enough record. It is that this is simply too short. Otherwise, we should just not pretend we have substantive unreasonableness review. We should just drop the charade that there's ever such a thing as substantive unreasonableness. I don't think that there's a... I don't think if there's a category of cases where we can agree, even outside this case, that jail or a certain period of jail is mandatory, this is not that case. And this is so unlike Zouk, where the crime was so depraved, not just the number of images and the number of videos, but Zouk was directing a 16-year-old to sadistically abuse a 5-year-old. And it was talking to the 16-year-old an hour a day. It was making arrangements to meet the 5-year-old. Well, sure, but Zouk is a case in which we set a sentence of, I believe, 22 months was substantively unreasonable. Here, what we'd be saying is that a sentence of 17 days is substantive. I mean, the difference between 17 days and 22 months is also pretty big. If deference to a district judge, especially as exceptionally experienced a judge as this one, is fully animated, there has to be room for the view and certainly a window open that under a certain set of circumstances, prison is not mandatory.  I can think of any number of crimes in which you could easily say prison is not mandatory. But under these circumstances, and I understand that. As I said before, it's a terrorism. The sentencing guidelines recommends a minimum of 188 months imprisonment. And so we start with the fact that the sentencing commission addressing this has thought that the crime is worth 188 months at least, maybe more. And all of sentencing is discretionary. So the sentencing guidelines were established before and now exist in tandem with the sentencing commission's most recent pronouncement about youthful offenders, which expressly say, find a way if you can, and I understand there's going to be disagreement about whether this is that case or not, but find a way if you can not to put someone in prison if they're young, given the way the brain develops and all of that. When you factor in the mental health issues and the fact that he's conceptually an adolescent, it takes it out of the kind of case where a broad swath of the community could understand that must be prison, like in Zouk, which was as depraved conduct as there could be, or a substantial drug dealer, or a terrorist, or name your crime, murder for hire. This is a serious crime. It's two different sets of serious crimes, right? Fair enough. Not all people who do data breaches do child pornography, and not all people who do child pornography do massive data breaches. It's serious crimes, plural. He's a kid. He's 21 years old, or 22 now. He committed the crime when he was 19 and 20 and had the mentality and was conceptualized as a 16 or 17-year-old. Maybe his mother was prejudiced. She saw him as more like a 14-year-old. Those are factors that meditate against putting this kid in prison. And so I understand the court's concern about the manner in which the court, the word she used to describe her sentence. It's on the record. It speaks for itself. We can debate about what she should have done or should have said or not said, but there it is. Before the court determines that this is necessarily an abuse of discretion substantively and requires prison, give her a chance to explain herself. She's an experienced judge. If she believes that the court's concern about the length of the sentence is well-founded and she should impose sentence, I imagine she will, but she should have that opportunity first. Let me ask you just that. If we were to conclude that 17 days is substantively unreasonable, why would we accept any explanation to justify 17 days? Because, I have five seconds left. I think my answer would be a little bit longer than five seconds if I can answer the question. Because I think the district court, in the first instance, should have the opportunity to hear the court's concerns in a hypothetical remand and discuss them and act on it. In other words, she, in the first instance, should have an opportunity. I understand, but that fails to recognize that we have found error or an abuse of discretion substantively, and we don't send back reverse on a substantive ruling in saying explain yourself better and we'll be persuaded. We've made a judgment, too. And our judgment would be, in this hypothetical, is that it is substantively unreasonable. That is not a call to have her explain herself further. She did explain herself. I'm not sure what she could say to add on to her reasons. If I can, I know my time is up, if I can ask that question. Look, here's what I would propose to the court. I understand your concerns. These are serious crimes. As a matter of fact, and I would want an opportunity to make a record of this, a proper factual record in district court and not here, BOP can't handle this, period. A hundred percent, a thousand percent, they can't handle this. And maybe it will be the court's judgment that sometimes we put people in jail, notwithstanding their issues, even if the prison system can't handle it. But I would want the court, this court, on a subsequent appeal, if any, from what the district court may do to see the evidence of that and to see how this particular young person would, in fact, be ravaged if he were put in the hands of the Bureau of Prisons. All right, thank you, Mr. Frisch. Mr. Addis. A few quick points. In an effort to salvage the district court's 17-day sentence, the defense counsel is urging this court for a procedure-type remand. I want to urge the court not to take that approach. Our challenge is entirely substantive. If the court finds some way to remand for procedure, I think the court should nonetheless, as the court did in Engle and in George, address the substantive issue, which is the district court's over-reliance on the defendant's mental health at the expense of all the other sentencing factors. This case is unlike Provence, on which the defendant relies. In Provence, the main issue, the reason why this court skipped over the government's substantive challenge was because it couldn't find any sentencing rationale at all. The court is explicit in Provence about that. The court couldn't perform its appellate review function because it couldn't find the district court's reasoning. That's not this case, not even close. We know exactly why the district court imposed a 17-day sentence. They told us this is why it was imposed in such an extensive variance. And that's a combination of mental health, youth, and a prediction about what incarceration would mean for this individual, collectively, is the district court's reasoning? Yes, all of which I think are subsumed under the category of mental health. But yes, those are the district court's reasons. I think the panel is attuned to this, but, and I said this before, we don't think a 17-day sentence or any sentence near 17 days is going to become substantively reasonable if a judge just says more words about it. It's just, at this point, almost an objective matter. And so remanding so the district court can say more words, first of all, a procedure-type remand is not a consolation prize for a substantively unreasonable sentence. I'm not sure which case the defendant relies on for the proposition that when a district court imposes a sentence that's substantively unreasonable, the court gets another shot at it so long as it just says more words. So we don't think that that's actually solving any, I think that's unprecedented to remand on that basis, but also I don't think it's solving any problems because if the district court does what I take defense counsel wanted to do, You're likely going to be right back here? Then we're going to be likely right back here. That's exactly right. Two more quick points. The defendant raised a point about supervised release and how there's this 20 years of supervised release looming over the defendant. I think that's really sort of illusory and sort of a red herring because on the district court's theory, this defendant cannot go to prison because BOP can't handle him. So the prospect of going back to prison if you violate supervised release conditions is fake. It's not real. The defendant violates supervised release conditions. We know the district court's theory. BOP can't handle this defendant. So it's not much to say that he's got 20 years of supervised release and if he makes one little blip, he'll go back to prison. On the district court's reasoning, that's not true. As the defendant's point about discretion, of course we recognize that district courts have lots of latitude and lots of discretion, but this court's cases like Abu Ali and Engel and other cases recognize that there are rare cases where district courts abuse their discretion and inherent in the notion of discretion is that it can be abused. This is one of those cases. I think the magnitude of the variance and the substance of the reasoning, again, sort of fly off the pages of this appeal, 17 days for a guideline range of 188 months to 235-month sentence. I think proportionally that's, I think, the biggest variance I could find in this court's cases. I think it's bigger than Zook, whose guideline range was capped at 240 and who got 26 months' time served. Is it right that in Zook the defendant's mental issue was the same as the mental issue here? I believe it was the same diagnosis. Your Honor, I want to answer your question, but the defendant's mental health has been, the specific condition has been sealed throughout the proceedings. So if I answer your question, I'm going to be stating his particular condition, so I want to respect that. But overall... That can be a case that guides us, I guess, even in our understanding of what BOP can handle and what it handled in 2017 when we decided. That's right, and there's details, and there's actually some details in Zook about what BOP can and can't do, and that's because in that case there were, I believe, five witnesses who testified or who provided evidence, different health care practitioners and also BOP personnel. And obviously this is not the place to litigate BOP's capabilities, but I just want to dispute the record. BOP can absolutely handle a defendant like Mr. Fitzpatrick. They have many defendants with the same and far worse mental conditions than Mr. Fitzpatrick, and it's just incorrect. Again, this is beyond the scope of this record, but just for the record I want to state that BOP can absolutely handle a defendant like Mr. Fitzpatrick. You're both making your statements beyond the record. Thank you. All right, we'll adjourn court for the day and come down at Greek Council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens